1

2                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
3                            AT SEATTLE

4   SW TRADERS, LLC,

5                        Plaintiff(s),

6          v.                                    NO. C09-778MJP

7   UNITED SPECIALTY INSURANCE              ORDER ON MOTIONS FOR
    COMPANY, et al.,                        1.  SUMMARY JUDGMENT
8                                           2.  LEAVE TO AMEND
                         Defendant(s).
9

10

11        The above-entitled Court, having received and reviewed

12        1.   Plaintiff's Memorandum and Motion for Summary Judgment (Dkt. No. 10)

13        2.   Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 21)

14        3.   Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment (Dkt. No.

15             29)

16        4.   Defendants' Motion for Summary Judgment (Dkt. No. 14)

17        5.   Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 17)

18        6.   Defendants' Reply in Support of Defendants' Motion for Summary Judgment (Dkt.

19             No. 26)

20        7.   Plaintiff's Second Motion for Leave to File Amended Complaint (Dkt. No. 33)

21        8.   Defendants' Response to Plaintiff's Second Motion for Leave to File Amended

22             Complaint (Dkt. No. 39)

23

24

25

26  **ORDER ON MOTIONS - 1**

9.      Praecipe re Joinder of Optimum Claims Services, Inc. in Defendants' Motion for

Summary Judgment (Dkt. No. 38)[1]

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART; Plaintiff's motion to declare Washington state law the controlling law of the contract is GRANTED and the remainder of the motion is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is GRANTED, and that all claims against all defendants are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to amend their complaint is STRICKEN as moot.

**Background**

The factual circumstances surrounding this dispute are tangled and convoluted.  The following timeline is drawn from the facts and evidence submitted by both sides to this controversy:

| | |
|---|---|
| **October 2008** | Stanley Lambert ("Lambert") bought a boat which he renamed M/V PACIFIC DAWN, intending to use it as a short-run freight hauler in American Samoa.  On the Bill of Sale (which is dated October 28, 2008; Moran Decl., Ex. A), the buyer is listed as "SW Traders, LLC." |
| **10/27/08** | Lambert contacted Ms. Waldron at the insurance brokerage firm of Venbrook Insurance Services ("Venbrook") seeking coverage for his boat. |
| **10/29/08** | A Certificate of Formation was issued by State of Washington for "SW Traders, L.L.C.;" the sole officer is listed as "Reginald Gates." [2]  Moran Decl., Ex. B1. |

---

[1]    The Defendants' Motion for Summary Judgment was filed by United Specialty Insurance Company and WFT Inc..  A third defendant, Optimum Claims Services, Inc. ("Optimum"), had not been served at the time of removal but filed this Praecipe re Joinder acknowledging receipt of Plaintiff's state court summons and complaint via certified mail from the Washington Secretary of State on August 18, 2009.  Without waiving any defects in service, Optimum joins in Defendants' motion.

[2]    The document is silent as to who initiated or authorized the company's formation.  The only evidence that this company was created at Lambert's behest is the hearsay declaration of  attorney Harold Thoreen.  *See* Thoreen Decl., ¶ 4.

| | | |
|---|---|---|
| 1 | **10/31/08** | Ms. Waldron contacted Ms. Armfield at Defendant WFT Inc. ("WFT") and |
| 2 | | transmitted a "Marine Insurance Application" ("Application;" filled out by Lambert, |
| 3 | | listing "Stanley Lambert/Pacific Dawn. Ltd." as the Vessel Owner) and a "Skipper's |
| 4 | | Questionnaire" (which listed Lambert as the Owner/Skipper).  The Application stated |
| 5 | | that the vessel would be owner-operated and that the applicant would notify WFT if |
| 6 | | that changed.  Armfield Decl., Ex. B.  There is no mention of SW Traders, LLC. |
| 7 | **11/14/08** | The U.S. Coast Guard issued the "Certificate of Documentation" for M/V PACIFIC |
| 8 | | DAWN ("Certificate").    The document lists the owner as "SW Traders LLC, |
| 9 | | comprised of one member."  Moran Decl.,  Ex. C.  The Certificate does not identify |
| 10 | | the "one member" of SW Traders, LLC. |
| 11 | **12/1/08** | WFT requested the Coast Guard "Certificate of Documentation" from the insurance |
| 12 | | broker (Armfield Decl., Ex. D); Venbrook e-mailed it as a PDF attachment to WFT |
| 13 | | that same day.  The transmitting e-mail does not mention that the owner listed on the |
| 14 | | Coast Guard documentation was different than the owner listed on the Application, |
| 15 | | nor does it contain a request to change or supplement the named insured party.  In the |
| 16 | | e-mail, Waldron referred to M/V PACIFIC DAWN as "Stan's vessel." <u>Id.</u>, Ex. E. |
| 17 | | On that same date, the insurance policy issued (with an effective date of October 31, |
| 18 | | 2008)  covering Hull and Machinery Protection and Indemnity Risks, and identifying |
| 19 | | the insured as: |

<div style="margin-left:3em">
Stanley Lambert, Pacific Dawn Ltd.<br>
2690 Pauo (*sic*) Lane<br>
Wahiawa, HI 96786
</div>

| | | |
|---|---|---|
| 22 | | There were no additional insureds, and no evidence that any objection was made to the |
| 23 | | designation of "Stanley Lambert, Pacific Dawn Ltd." as the named insured party. |
| 24 | **12/11/08** | M/V PACIFIC DAWN left Vancouver, B.C., bound for American Samoa. |
| 25 | **12/13/08** | The vessel encountered heavy weather and sustained damage to items in Hold #2. |

| | | |
|---|---|---|
| 1 | **12/27/08** | WFT was notified of the loss (Waldron's notice referred to Lambert as "our insured;" |
| 2 | | id., Ex. F). |
| 3 | **12/29/08** | The vessel went into dry-dock in Hawaii for cleanup and painting unrelated to the |
| 4 | | storm damage; Venbrook hired Mr. Doyle to survey and assess the damage. Lambert |
| 5 | | met with Doyle and assisted in his valuation of the damaged property. |
| 6 | **1/10/09** | Lambert was injured in a motorcycle accident on Oahu and lapsed into a coma. |
| 7 | **1/15/09** | Doyle issued a report assessing the loss value at $106,909. Bratz Decl., Ex. B. |
| 8 | **1/23/09** | Lambert died. |
| 9 | **1/26/09** | Waldron/Venbrook e-mailed Armfield/WFT to say that "Venbrook has been |
| 10 | | instructed" to change the insured on the policy to: |

> Stanley Lambert F/V Pacific Dawn
> SW Traders LLC
> 2960 Paio (*sic*) Lane
> Wahiawa, HI 96786

There is no indication who had "instructed" Venbrook and no assertion that a mistake had been made previously. Armfield Decl., Ex. I. Armfield forwarded the request to WFT's home office.

**2/9/09**  Waldron/Venbrook sent an e-mail (id., Ex. J) superseding the previous request and indicating that Venbrook had "now been instructed to change the named insured to. . . [Lambert's] lawful widow, Tracy Lambert" (again, there is no mention of who issued the instruction):

> Estate of Stanley Lambert, S.W. Traders
> c/o Tracy Lambert
> 111 Shelbourne Blvd.
> Cambell (*sic*) River, B.C. V9W 652
> Canada

This request was also sent on to the home office. WFT issued the amended endorsement as requested with an effective date of January 26, 2009. Id., Ex. K.

| | |
|---|---|
| **4/14/09** | Plaintiff filed "Notice of Bad Faith Claim" with Washington State Insurance Commissioner based on Defendants' failure to either deny coverage or issue a reservation letter.  Moran Decl., Ex. S1. |
| **4/28/09** | In an e-mail to the claims agent for Defendant Optimum Claims, Plaintiff's attorney referred to his discovery that "the underwriters had issued a post-loss endorsement changing the identity of the named insured some 30 days *after the loss.  See Attached Endorsement.*[3] As you well know, the named insured and beneficiary under the policy is SW Traders, LLC... [which] did not request or authorize this change..."  Plaintiff's counsel went on to demand an explanation and, failing that, to threaten to refer the matter to the Washington State Insurance Commission as "a pretty clear cut case of criminal fraud."  Bratz Decl., Ex. E; emphasis in original. |
| **4/29/09** | Edmondson/Venbrook sent Armfield/WFT an e-mail indicating that "[i]t appears that the vessel was put in the name of SW Traders LLC, Therefore believe we should amend to this name only |

> SW Traders LLC
> 2960 Palo (*sic*)  Lane
> Wahiawa, Hawaii (per bill of sale) Effective 10/30/08"

Id., Ex. L.   Armfield forwarded this request along to the home office, which refused to amend the endorsement.

**Discussion**

Since it is the finding of this Court that the issues raised in Defendants' summary judgment motion are dispositive of this matter, the Court turns first to that pleading.

---

[3]  Unfortunately, the exhibit containing the e-mail does not include the "Attached Endorsement" so the Court is unsure which of the two changes (January 26 or February 9, 2009) Plaintiff's counsel is referring to.  The Court assumes that it was the February 9 change that named the Estate of Lambert as an additional insured, since the e-mail goes on to state that SW Traders is the named insured (which did not occur until the January 26 amendment).

1   <u>Defendants' Summary Judgment Motion</u>

2   <u>*Uberrimae fidei*</u>

3       Defendants argue (and Plaintiff concedes) that federal admiralty law governs maritime

4   contracts except to the extent that there is no judicially established federal admiralty rule governing

5   the issue presented.  <u>Wilburn Boat Co. v. Fireman's Fund Ins. Co.</u>, 348 U.S. 310 (1955).  Washington

6   case law holds that state law "controls the interpretation of a marine insurance policy only in the

7   absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in

8   admiralty practice."  <u>Kimta AS v. Royal Ins. Co.</u>, 102 Wn.App. 716, 722 (2000).  In this case, there is

9   a "judicially fashioned admiralty rule" at the forefront of the Court's analysis.

10       Plaintiff agrees with Defendants that the federal maritime doctrine of *uberrimae fidei* is

11   available as a defense in this matter.  Pltf. Response, p. 2.  The phrase means "utmost good faith"

12   and requires an applicant for marine insurance "*even if not asked*, to reveal every fact within his/her

13   knowledge that is material to the risk."  <u>Cigna Prop. and Cas. Ins. Co. v. Polaris Pictures Corp.</u>, 159

14   F.3d 412, 418, n. 1 (9th Cir. 1998)(emphasis in original).  An insurer may rely on the rule to rescind

15   an insurance contract "if it can show either intentional misrepresentation of a fact, regardless of

16   materiality, or nondisclosure of a fact material to the risk, regardless of intent."  <u>Id.</u> at 420; citing

17   <u>Washington Int'l Ins. Co. v. Mallone</u>, 773 F.Supp.189, 191 (C.D.Cal. 1990).[4]

18       The Court finds that the issue of intentional misrepresentation is not amenable to resolution

19   by summary judgment.  Although there is a circumstantial case to be made that Lambert (a Canadian

20   citizen) had a motive to set up a dummy corporation and misrepresent the true nature of the

21   ownership arrangement to his insurance company (it is illegal for non-citizens to own *or* skipper

22   U.S.-registered vessels; 48 U.S.C. §§ 12103(a), 12151(b)(6)), there are simply too many disputed

23

24       [4] Defendants also point out that the policy itself contains a "Misrepresentation" provision which states that "if

25   the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject
     matter thereof. . . whether before or after a loss, coverage under this policy will be forfeited which otherwise was
     granted."  Armfield Decl., Ex. G, p. 25.

26   **ORDER ON MOTIONS - 6**

issues of material fact – and too little evidence regarding the motives of the departed Mr. Lambert – to award summary judgment on that basis.

Far more convincing is the argument that the omission of the fact of ownership of M/V PACIFIC DAWN by Gates/SW Traders from the Application and the Skipper's Questionnaire represents the nondisclosure of a material fact which voids the contract <u>regardless</u> of whether the omission was intentional or not.  Case law defines a "material fact" in maritime insurance as one that "may increase the liability to loss, or affect the risk or obligation assumed and which is, in fact or law, within the knowledge of one party and not the other."  <u>Steelmet v. Caribe Towing Corp.</u>, 747 F.2d 689, 605 (11th Cir. 1984).  "A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular premium."  <u>Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.</u>, 518 F.3d 645, 655 (9th Cir. 2008) (quoting <u>N.Y. Mar. & Gen. Ins. Co. v. Tradeline</u>, 266 F.3d 112, 123 (2d Cir. 2001).

The Court is persuaded that the ownership of a vessel is a material fact subject to the disclosure requirements of maritime insurance law.  It is illegal for non-citizen to own a U.S.-flagged vessel (46 U.S.C. § 12103(a)) and further illegal for a U.S.-documented vessel to be "placed under the command of a person not a citizen of the United States." [5] 46 U.S.C. § 12151(b)(6).  The penalties include fines, seizure and forfeiture.  46 U.S.C. § 12151(a) and (b).  Ms. Armfield, the marine insurance underwriter responsible for the decision to insure M/V PACIFIC DAWN, submitted two declarations wherein she attested to the materiality of the following non-disclosed facts:

---

[5] It appears from the evidence submitted that Lambert never disclosed that he was a Canadian citizen.  Although not argued in the briefing, that omission from the Application could also constitute a material nondisclosure.  Regardless of whether Lambert was or was not the owner of M/V PACIFIC DAWN, it appears that he was the skipper of the boat on its voyage to American Samoa, a position forbidden to non-citizens on a U.S.-flagged vessel.

1          •          Lambert's non-citizen status (vis-a-vis his purported ownership and his skippering of

2                     the vessel);

3          •          The creation of a business entity in which the applicant (Lambert) had no stake to hold

4                     title to the vessel; and

5          •          The unknown experience, reputation or character of the sole member of that entity

6                     (Gates).

7    Armfield states that all of these factors would have affected her assessment of the risk inherent in

8    insuring the boat; she also testified that, if she knew at the time of insuring M/V PACIFIC DAWN

9    what she knows now, she would not have made the same decision on the same terms with respect to

10   the policy issued on the vessel.  First and Second Armfield Decl's.

11          Defendants attempt to discredit Armfield's testimony with a declaration from an insurance

12   broker for Venbrook (Ms. Edmondson) who claims that she has worked with Armfield for 20 years

13   and never heard an indication from her that it was important to know the names of individuals in a

14   company holding documented title to a vessel.  Second Edmondson Decl., ¶¶ 3-8.  The Court does

15   not find Edmondson's observations sufficient to create a genuinely disputed issue of material fact.

16   Armfield's testimony makes it clear that, while she does not always ask for the identity of every

17   member of every owner corporation, she would have considered it material for issuing a policy for

18   M/V PACIFIC DAWN at the price quoted[6] to know the identity of the <u>sole</u> member of an owner-

19   corporation and the fact that it was not the man who identified himself as the owner in the initial

20   application (with whom the company had previously done business).  Second Armfield Decl., ¶ 6.

21   She goes on to assert:

22

23

24          [6]  The doctrine of *uberrimae fidei* is not only concerned with whether the policy would have been issued had the
     material fact or facts been disclosed, but also whether the policy would have been issued <u>at the rates quoted</u>.  If the non-
25   disclosed information would have affected that aspect of insurance analysis and valuation (as Armfield testified above), it
     would likewise be considered "material."  "A non-disclosed fact is material if it would have affected the insurer's decision
     to insure at all <u>or at a particular premium</u>."  <u>Certain Underwriters</u>, 518 F.3d at 655. (emphasis supplied)

26   **ORDER ON MOTIONS - 8**

I would consider it material to assessing the risk being underwritten to know what vessel owning and operating experience this unidentified documented owner corporation **and** its sole member Mr. Gates had, whether it/he planned to operate the vessel, for what purpose, how well the LLC was capitalized, what stake Mr. Gates had in the vessel, and what stake Mr. Lambert, identified as the sole owner (equitable or otherwise) and the operator, had in SW Traders.

<u>Id.</u> (emphasis in original)

Furthermore, the leading Ninth Circuit case on *uberrimae fidei,* <u>Cigna Properties</u>, turns on the issue of the materiality of the true identity of the owner:

The facts [Defendants] Polaris and Inbanco failed to disclose were material to Cigna's risk. Polaris failed to disclose DeGeorge's ownership interest in the [vessel]. (*citation omitted*).... Polaris also failed to disclose the relationships among DeGeorge, Polaris, Inbanco and Tridon.

<u>Cigna</u>, 159 F.3d at 420.

Plaintiff attempts to make much of the fact that, prior to the issuance of the written policy, Defendant WFT was provided with a document containing the information that SW Traders was the owner of the vessel.[7]  This argument fails:

1:    There is nothing in the e-mail that alerts the insurance company that the attachment contains material information different from what had previously been provided.  In fact, the effect of the communication is just the opposite – "... per your request, please find the new documentation on *Stan's vessel*."  Armfield Decl., Ex. E (emphasis supplied).  The implication was unmistakable that the original representation that Lambert owned the boat is still the case.  The Court is mindful that Lambert had previously represented (on the Application) that the vessel would be "owner operated" and that he would "submit if changed."  Armfield Decl., Ex. B, p. 2.  Neither Lambert, Venbrook or SW Traders took a proactive part in "submitting" a change in the owner-

---

[7]  The Court notes at the outset Plaintiff's repeated attempts throughout its briefing and supporting declarations to imply that this information was voluntarily supplied by either Venbrook or SW Traders, thus fortifying its argument that no material nondisclosure occurred.  The evidence indicates otherwise.  A review of the correspondence surrounding the e-mailing of the Certificate of Documentation makes it clear that the information was not supplied to Defendant WFT until one of WFT's employees requested it by e-mail on December 1, 2008.  Armfield Decl., Ex. D.

**ORDER ON MOTIONS - 9**

operator status nor, when they were finally prompted to provide the requisite

Certificate, did they make any attempt (beyond submitting an attachment in an e-mail)

to alert the insurer to the fact that the "operator" of M/V PACIFIC DAWN was no

longer the person originally represented to be the "owner."

2:      There is no evidence before the Court regarding whether anyone at WFT opened the

attachment to the e-mail and noticed that the owner of M/V PACIFIC DAWN was not

the same entity represented on the Application. The Court does not find this

significant. The Certificate merely lists the owner as "SW TRADERS

LLC/COMPRISED OF ONE MEMBER," with the same address as Lambert had

previously supplied in the Application. The "one member" is not identified by name

in the document. Even if the underwriter had opened the attachment and noticed that

the documented title holder was a company different than that listed in the

Application, there is nothing in the Certificate (or the accompanying e-mail) that

would have alerted them that Lambert (the man with whom they had had prior

dealings and who had represented that he owned the boat) was not the "one member"

listed on the certificate. On the contrary, the e-mail reference to "Stan's vessel" would

have understandably lead them to believe that the owner (and their named insured)

was still the same man who had submitted the Application.

Finally, Plaintiff argues that "*uberrimae fidei* is a two way street," and that the responsibility
is equally on the insurance company's shoulders to ferret out information material to its risk analysis.
Pltf. Response, p. 4. This is not the state of the law. As the Ninth Circuit stated in <u>Certain</u>
<u>Underwriters</u>, "... *uberrimae fidei* rests on disclosure, not solicitation." 518 F.3d at 655. And the
court in <u>Cigna Properties</u> spelled out that "[t]he doctrine of *uberrimae fidei* requires a marine
insurance applicant *even if not asked*, to reveal every fact within his/her knowledge that is material to
the risk." 159 F.3d at 418, n. 1 (internal quotations omitted; emphasis in original). Tellingly,

1    Plaintiff cites no legal authority for its argument that the insurance company cannot complain about

2    nondisclosure if it did not ask for the information or request further clarification.

3           This application of federal maritime insurance law is, technically, the end of the inquiry into

4    the issues of this case: where the doctrine of *uberrimae fidei* is found applicable on the basis of a

5    material nondisclosure, the policy is voided.  HIH Marine Services, Inc. v. Fraser, 211 F.3d 1359,

6    1362 (11th Cir. 2000).  In the interests of a thorough review of the issues, however, the Court will

7    continue on to an analysis of the state law insurance issues presented by this controversy.

8    *Standing: Plaintiff's status as an "insured party"*

9           The one issue raised by Plaintiff's motion for summary judgment on which it prevails

10   concerns the choice of law in the dispute between these parties in diversity.   "When a court sits in

11   diversity, it must look to the forum state's choice of law rules to determine the controlling substantive

12   law."  Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002).  To the extent that this Court must look to

13   state substantive law to determine the issues here, Washington state law dictates that it must be the

14   law of the state where the marine insurance policy was "executed, issued and delivered."  Williams v.

15   Steamship Mutual Underwriting Assoc., 45 Wn.2d 209, 229 (1954).

16          Defendants' argument that Hawaii is the forum with the most significant contacts is not

17   supported by the facts.  Seattle is the location where the contract was executed and from which it was

18   delivered.  At two places in the policy, the law of the State of Washington is invoked: in the General

19   Average and Salvage section ("General Average and Salvage shall be payable. . . in accordance with

20   . . . the Laws and Usage of the Port of Seattle") and the Litigation provision  (". . . if by the laws of

21   the state within which this Policy is issued [a 12-month statute of limitations] is invalid. . .").

22   Armfield Decl., Ex. G, pp. 8 and 18.

23          Hawaii was simply the place where Lambert lived and coincidentally the place where the

24   vessel ended up.  Furthermore, the policy specifically states: "This Insurance Contract is issued by an

25   insurer which is not licensed by the State of Hawaii and is not subject to its regulation or

1  examination. . .").  Id., p. 2.  The Court will examine this policy under Washington law to assess the

2  validity of Defendants' argument that Plaintiff's case must be dismissed because it is not an insured

3  party under this contract.

4       The Court's analysis of this argument starts from the premise that Plaintiff cannot collect as a

5  named insured party on this contract.  It was not the named insured party under the policy as

6  originally issued and no protest or claim of mistake was ever lodged with Defendants prior to the

7  property loss for which recovery is sought.  Under any interpretation of the facts, Plaintiff was not

8  added to the policy until after the damage had occurred, and no argument has been put forth that

9  Plaintiff is somehow retroactively entitled to the proceeds under the policy for an event which

10 predates the document being revised to include "SW Traders, LLC" as an insured party.

11      Furthermore, SW Traders was not a party to the contract – there is no evidence (and Plaintiff

12 makes no claim) that there was any offer, assent or consideration passing back and forth between

13 Defendants and SW Traders.  Nor is there proof of manifestation of an intent to make Plaintiff a

14 third-party beneficiary to the contract; such a relationship can exist only where there is evidence that

15 the contracting parties intended to create one (Shaffer v. McFadden, 125 Wn.App. 364, *reh. denied*,

16 155 Wn.2d 1010 (2005)) and Plaintiff has produced no such evidence.

17      Plaintiff's position is that it is entitled to recover under the policy because it is covered as an

18 "owner" by the "Affiliated Companies Clause" of the agreement, which reads:

19         In respect of the Vessel(s) insured hereunder, it is agreed that this Policy also covers the
           Assured and affiliated companies of the Assured be they owners, subsidiaries or inter-related
20         companies as bare-boat charterers and/or charterers and/or sub-charterers and/or operators
           and/or in whatever capacity. . .
21
22 Armfield Decl., Ex. G, p. 19.

23      Plaintiff would have the Court read "owners" as "owners of the vessel."  Washington law,

   however, requires that the contract be enforced as written.  WA Public Utility Dist. Util.Sys. v. Public
24
   Util. Dist. 1, 112 Wn.2d 1 (1989).  A complete reading of the insurance document leaves no doubt
25
   that the "Assured" is simply another way of saying "the named insured party."  *See* Armfield Decl.,
26 **ORDER ON MOTIONS - 12**

Ex. G, pp. 2, 6, 9, 10, 11, 12.  Taken in the context of the provision, "owners" is part of a dependent clause describing "affiliated companies of the Assured," the plain meaning of which is: "owners of the Assured[8] and affiliated companies of the Assured" (such as charter companies).   The "Assured" under this policy at the time it was issued (and the time the loss occurred) was Stanley Lambert.  SW Traders, LLC was not an "owner of the Assured."

There is no evidence before this Court (nor does Plaintiff even make the argument) that SW Traders, LLC was  an "affiliated company" of Lambert or Pacific Dawn Ltd.  <u>If</u> SW Traders is covered at all under this policy, the coverage did not arise until the policy was amended (on January 26, 2009) to include it – after the loss-producing event.  Plaintiff has no insurable interest which entitles them to recover for the loss at issue in this lawsuit.

Defendants are entitled to summary judgment under both their federal and state law arguments: the contract is void *ab initio* under the doctrine of *uberrimae fidei* based on the nondisclosure of the material fact of the ownership of the vessel and Plaintiff has no insurable interest under which it is entitled to recovery even if the policy were not void.

<u>Plaintiff's Summary Judgment Motion</u>

Besides the choice of law issue, Plaintiff's motion raises two other arguments.  The first is that Defendants waived any other objections to coverage by failing to assert them in the initial coverage denial.  This argument is based on (1) a 1905 case which has not been cited in 40 years (<u>Moore v. National Accident Society</u>, 38 Wn. 31 (1905) and (2) a hearsay statement from a Venbrook employee trying to explain why no payment on the policy had been forthcoming (a statement which even Plaintiff calls "the closest thing to a coverage denial;" Pltf. Mtn., p. 14).  The fact is that there

---

[8]  In the event the "Assured" were a corporation or other business entity.

**ORDER ON MOTIONS - 13**

was no "coverage denial"[9] and thus Defendants are not estopped from raising any available defense in support of their refusal to accede to Plaintiff's demands.

Furthermore, when the doctrine of *uberrimae fidei* applies, the policy is void *ab initio* and therefore the claimant cannot avail itself of principles of waiver and estoppel.  <u>HIH Marine Services, Inc.</u>, 211 F.3d at 1362.  Similarly, the application of the doctrine renders the issue of insurable interest moot.  <u>Id.</u>

Finally, Plaintiff's motion for summary judgment raises the issue of numerous alleged violations of Washington insurance laws and the Washington Administrative Code.  Having found the policy void from its inception and having ruled that Plaintiff has no insurable interest even if the policy were not void, this Court need examine no further the ways in which Plaintiff claims it was injured by Defendants' actions.

<u>Plaintiff's Second Motion for Leave to File Amended Complaint</u>

Based on the above analysis, the Court's granting of summary judgment to Defendants and dismissal of Plaintiff's claims with prejudice renders the issue of further amending the complaint moot, and that motion is ordered stricken.

**Conclusion**

Plaintiff has based its attempt to secure compensation under this policy at least in part through recourse to principles of equity.  The equities do not favor its position.   Plaintiff seeks recovery from the proceeds of a policy for which it paid nothing, covering the property from a vessel in which it had no investment.  The Court finds the policy void because of the nondisclosure of material facts concerning its ownership and operation, and further declares that Plaintiff has no insurable interest in the proceeds from the damage at the center of this controversy.

---

[9]  Plaintiff itself represented that there had been no coverage denial when it filed its "Statutory Notice of Bad Faith Claim" with the Washington State Insurance Commission – the box for indicating a violation of RCW 48.30 "for unreasonably denying a claim for coverage" is unchecked.  Moran Decl., Ex. S.

**ORDER ON MOTIONS - 14**

Defendants' motion for summary judgment is GRANTED and the matter is DISMISSED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated: December __29___, 2009

Marsha J. Pechman
U.S. District Judge